# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3284
_____

Ansu Abraham

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: September 18, 2012
Filed: November 15, 2012

_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Ansu Abraham pled guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1). The district court[1] sentenced him to twelve months and one day imprisonment, as well as three years supervised release.

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

At the time of his guilty plea and sentencing, Abraham was a Legal Permanent Resident. The Bureau of Immigration and Customs Enforcement initiated removal proceedings against him due to his conviction. Abraham filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing his counsel was ineffective in failing to advise him of the immigration consequences of his guilty plea. The district court denied this motion, as well as Abraham's subsequent motion for reconsideration. Abraham appeals the district court's denial of his motion for reconsideration. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm, "albeit for different reasons than those articulated by the [d]istrict [c]ourt." See Anderson v. United States, 393 F.3d 749, 753 (8th Cir. 2005).

I.

On September 15, 2009, Abraham pled guilty to possession with intent to distribute cocaine. In preparation for sentencing, a probation officer prepared a Presentence Investigation Report ("PSR") and a Sentencing Recommendation. The PSR included the following language:

> It is noted that Mr. Abraham is a Legal Permanent Resident of the United States, and is authorized to live and work here. The instant offense renders him deportable. As a result of his immigration status, the Bureau of Immigration and Customs Enforcement will lodge a Detainer for Deportation against the defendant.

Abraham's Sentencing Recommendation included substantially similar language.[2]

---

[2]The Sentencing Recommendation stated:

> Mr. Abraham was born in Liberia. He is a U.S. Legal Permanent Resident. The instant offense renders him deportable. As a result of his immigration status, the Bureau of Immigration and Customs Enforcement will lodge a detainer for deportation. Thus, it is

Through his attorney, Abraham accepted the PSR without objection on November 5, 2009.

The district court held a sentencing hearing on November 30, 2009. At that hearing, with Abraham present and in open court, Abraham's attorney confirmed he received the PSR and Sentencing Report and discussed them with Abraham. The district court accepted the PSR, adopted its findings, and sentenced Abraham to twelve months and one day imprisonment, as well as three years supervised release.

On March 31, 2010, four months after the district court sentenced Abraham, the Supreme Court held in Padilla v. Kentucky, 130 S. Ct. 1473, 1486 (2010) that when advising a criminal defendant about the consequences of pleading guilty, "counsel must inform her client whether his plea carries a risk of deportation," and that failure to do so is subject to analysis under Strickland v. Washington, 466 U.S. 668 (1984). In late 2010, the Bureau of Immigration and Customs Enforcement detained Abraham to initiate removal proceedings due to his conviction. Abraham subsequently filed a motion to vacate his guilty plea on February 21, 2011, arguing that in light of Padilla, his attorney was ineffective in failing to advise him of the immigration consequences of his guilty plea.

The district court denied Abraham's motion. United States v. Abraham, 2011 WL 3882290, at *3 (D. Neb. Sept. 1, 2011) (unpublished). The court first expressed doubt that Padilla applied retroactively on collateral review but then went on to "assume that Padilla is retroactive and Abraham's motion was timely filed . . . ." Id. at *2. The court held that even if Padilla were retroactive, Abraham was not entitled to relief under Strickland because (1) at the time Abraham pled guilty, "it was not clear that it was a prevailing professional norm in the Eighth Circuit to inform a

---

recommended that he comply with the regulations of the Bureau of Immigration and Customs Enforcement due to his immigration status.

defendant of immigration consequences when pleading guilty" and (2) Abraham could not show prejudice because a related state charge was dismissed in light of the federal prosecution but "could likely be reinstated" and result in deportation if the federal conviction were vacated.  Id. at *3 (internal quotation marks omitted).

II.

We review de novo a district court's denial of a motion to vacate under 28 U.S.C. § 2255.  Hodge v. United States, 602 F.3d 935, 937 (8th Cir.), cert. denied, 131 S. Ct. 334 (2010).

The Supreme Court held in Padilla that failure to advise a defendant of the immigration consequences of pleading guilty is subject to Strickland's two-pronged analysis.  130 S. Ct. at 1482.  Under the first Strickland prong, a court must "determine whether counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms."  Id. (internal quotation marks omitted).  "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear."  Id. at 1483 (internal footnote omitted).  Under the second Strickland prong, the court must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 1482.

The circuits are split over whether Padilla is a new rule of constitutional law or a new application of an old rule.  This distinction is important because old rules apply retroactively on collateral review, while new rules, subject to narrow exceptions, do not.  See Teague v. Lane, 489 U.S. 288, 310 (1989).  Three circuits have held Padilla announced a new rule that does not apply retroactively.  See United

-4-

States v. Amer, 681 F.3d 211, 214 (5th Cir. 2012); United States v. Chang Hong, 671 F.3d 1147, 1148 (10th Cir. 2011); Chaidez v. United States, 655 F.3d 684, 686 (7th Cir. 2011), cert. granted, 80 U.S.L.W. 3429 (U.S. April 30, 2012) (No. 11-820). Two circuits have assumed, without deciding, that Padilla announced a new rule and then held that if it is a new rule, Padilla does not apply retroactively. See United States v. Mathur, 685 F.3d 396, 398-99 (4th Cir. 2012); Figuereo-Sanchez v. United States, 678 F.3d 1203, 1208-09 (11th Cir. 2012). Only one circuit has held that Padilla is "a new application of an 'old rule'" and consequently that it does apply retroactively. See United States v. Orocio, 645 F.3d 630, 641 (3d Cir. 2011). The Supreme Court has granted certiorari in Chaidez to resolve the question of whether Padilla is an old or new rule.

We need not decide whether Padilla applies retroactively on collateral review because we hold that even if Padilla does apply retroactively, Abraham cannot satisfy Strickland's prejudice prong. Regardless of whether Padilla is retroactive, a defendant cannot satisfy Strickland's prejudice prong when "the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the defendant] confirmed that he had read the PSR, discussed it with his counsel, and understood it; and [the defendant] never moved to withdraw his guilty plea." See Correa-Gutierrez v. United States, 455 F. App'x 722, 723 (8th Cir. 2012) (unpublished per curiam).

Abraham does not dispute that he read the PSR, but rather argues that his attorney was ineffective for failing to advise him that the offense "virtually ensured" deportation. However, Abraham's revised PSR clearly indicated his offense rendered him deportable. Abraham accepted this PSR without objection, and his attorney confirmed at sentencing, with Abraham present and in open court, that he received the PSR and discussed it with Abraham. Abraham never moved to withdraw his guilty plea. Thus, there is no "reasonable probability that . . . the result of the proceeding would have been different" had Abraham's attorney advised him of the

immigration consequences of pleading guilty.  See Padilla, 130 S. Ct. at 1482. Because Abraham cannot satisfy Strickland's prejudice prong, he is not entitled to relief.[3]  See Anderson v. United States, 393 F.3d 749, 753 (8th Cir. 2005) (noting movant must satisfy both Strickland prongs to be entitled to relief).

III.

For the reasons above, we affirm the district court's denial of Abraham's motion for reconsideration.

_____

[3]We do not address whether counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms."  See Padilla, 130 S.Ct. at 1482.